Our last case this morning is Simile Applications In Internet Time v. Salesforce, 2024, 1685. Mr. DiFrancenzo again. The district court granted nearly $7 million in fees against my client AIT, who is here, based on a single sentence in the opinion of fees. The district court said we continued to litigate after claim constructed and ended any reasonable likelihood of prevailing on the merits. The district court didn't explain why. Appellees have never identified any part of any description of the specification that would preclude our impringement argument. They haven't come forth either the district court or here and said it doesn't have an objective. It doesn't have rules. Below, Salesforce conceded on summary judgment that it's a specialized program and their summary judgment motion was not based on that. So the district court did not provide any rationale on why the case became unreasonable. Further, in the two years... The district court said you've lost the key issue. Therefore, continuing is hopeless. Yes. And that's sanctionable. Why shouldn't we respect that? I understand that. The reason is here that, as Judge Stoll recognized, the descriptions and the specification are very broad. And actually at the claim construction hearing, I had a colloquial... The judge asked how the accused product worked and I responded that we hadn't finished source code review, but generally speaking, it hits a button, the software goes and compares the metadata in two different applications and detects changes. And the judge said, then you could argue that they're invoking an intelligent agent. So even if we're wrong at the end of the day, it certainly wasn't unreasonable to continue this case given the broad descriptions in the specification. Further, in the two years following claim construction, upon which Appellee's Council billed almost seven million dollars, not once did they write a letter, write an email, place a phone call, and say you have to drop this case. We don't have an intelligent agent, and here's why. In fact, even in their merits appeal, they never say why they don't have an intelligent agent. Why the deploy function is not an intelligent agent. Now that's not a dispositive point, right? What? That's not a dispositive point, right? That, no, it's not. You are correct, Your Honor. They don't have to, but we had no reason to believe the descriptions in the spec would lead to some rejectment. At the end of the... What? What about POP? What about, you know, the claim interpretation? How does it relate to validity? Well, with respect to POP, the claim construction reading an intelligent agent made it harder for them to prove infringement. Their own expert didn't testify that POP discloses an intelligent agent. He said he didn't consider it, but he made up a construction out of whole cloth that he called AITs, interpretation, and you'll note Appellee argues, well, AI took on reasonably broad positions on intelligent agent and changes that effect. They cite no record evidence where we ever took such broad positions. The opinions of Mr. Zakovich, our expert, are pretty clear. It's consistent with the descriptions in the specification. He said it over and over. It's in the brief. He never said it could be anything. Never once. He never said changes that effect would be of typing changes into a field. And further and more importantly on invalidity, when you read a limitation in, you're making it harder to prove invalidity, not easier. Can I ask you something else? The court held that Salesforce had satisfied its burden under the court's local rules to provide a reasonable itemization. Did the court's local rules say anything about redaction? It does not. It does not. It just says, it just says you have to provide a fair description. It says reasonable itemization and description of work performed. Yeah, and how do you think the district court knew what work was performed? I don't think the district court. There was a declaration, right? There was a declaration. It had little, oh, over these four months we did these things. But we're talking about seven million dollars over, a little over 18 months. And my client, as of now, has to pay that. And we can't even judge how that's reasonable. Not correctly understanding that every single entry is redacted? Every single entry. And then it's, sorry. Now, they point to two warnings in their brief. They say, you were warned. We were warned at the claim construction hearing because the district court said, well, if you read the claims broadly for infringement, you better be careful on invalidity. But that wasn't respect to the intelligent agent limitation. That was respect to a completely different limitation. That wasn't a warning. And then secondly, the second warning was a month before, or alleged warning, a month before the summary judgment hearing. And at that hearing, two things were discussed. Apelli was looking for a stay. Now, Apelli was looking for a stay. Why would they be looking for a stay if we had a frivolous position on infringement? And the summary judgment hearing was a month away. Our position wasn't frivolous. They never told us it was frivolous. We still don't, the basis for the district court's judgment at the end of the day wasn't that the construction precluded infringement. It was our expert didn't label the tasks and objectives, which are in boxes in his source code analysis with a line that says task and objective. From reading the district court's opinion, had we done that, we would have survived summary judgment. And I asked, how could a reasonable client, at getting the claim construction, at the claim construction order, after the claim construction hearing where the district court said, if it goes out, the text changes, and it's a program, you can argue it's an intelligent agent. What reasonable client would drop the claims? What reasonable client would drop the claims without a letter? And I know you don't always need a letter, but in that circumstances, when the language descriptions and the specification are that broad, if you believe the opposing counsel doesn't have a good faith basis to continue, and you're going to continue to bill 6.8 million dollars over the next, sorry, next 18 months, I think any reasonable litigate would send such letter. And it's not fair to my client that they're on the hook for this amount, if they would have done it and explained it rationally, which they still haven't done to this day, is rationally explain why the deploy function is not an intelligent agent, given the descriptions in the spec. If they had a reason, they should have told us. And the fact is, they still haven't told us. That's all I have on the future. We will save your rebuttal time. Mr. Johnson. Thank you very much. May it please the court. A district court's grant of attorney's fees is reviewed for abuse of discretion, and I think as your honor was indicating, the fact that Salesforce was under no obligation to send a Rule 11 type letter to AIT. This was a case from the very beginning that they knew they were trying to thread the needle on, and there's no threading of any needle with respect to trying to argue on the one hand that the Salesforce products infringe, and then on the other hand that they're not otherwise, the claims are not otherwise invalid. So the district court has basically one sentence for its reasoning. That's what we need to review for abuse of discretion, right? And it's that when a patentee continues to litigate after claims destruction and any reasonable likelihood of prevailing, the award of attorney fees is warranted, right? I mean, that's I think that's the, I think that's part of the gist. I don't, I wouldn't say that's the whole holding, because I think that the judge talks about the totality of the circumstances, and the judge lit this case as I did, as counsel for AIT did from the beginning, and it was several different times in different hearings where the judge pointed out that the arguments AIT was advancing were contradictory, over and over again. And it wasn't just in the context of... Where is this discussion of the totality of circumstances? I mean, I'm not saying that the district court, you know, I just don't see it. I think there's a reference to looking at the totality of the circumstances under the case law. I think you can assume you have it in front of you. I'd like to see where you're pointing to. I mean, I see it on page A9, is where I'm looking. There's one paragraph that talks about, you know, it was reasonable to bring the claims initially, but then, you know, after claim construction, it wasn't reasonable anymore. I don't see anything else. What I was, what I was saying, Your Honor, with respect to, for example, pages, on page 9, lines 3 down to 13, and the case line, the Adjusticam case, talks about the totality of the circumstances, so he doesn't... Page 9, lines 3 to 13? Thereabouts, yes. Okay, show me exactly where totality of the circumstances is. The word's not there. Okay, then what is there? It is the, it is the reasoning in this part of the order. Well, I only see one reason. Tell me where the other reasons are, please. I don't want to miss it. Well, Your Honor, I don't, this is the totality order. I don't see anything else that's described there other than what Your Honor is pointing to. So, what I pointed to is the totality of circumstances? Yes, yes. So, your position is that a, this 10 page, a 10, 10 line discussion is the entirety of the analysis as to why this is an exceptional case? I believe that what we have here in Judge Jones's order, the 10 page order, is a reflection of the work that went into making the decision that attorney's fees were justified. Well, maybe, but it would have been helpful if she had described exactly what in the totality of circumstances it was that led her to reach this conclusion. I mean, just saying, based on the totality of circumstances, this is, this is an exceptional case without explaining exactly why she reached that conclusion leaves us a bit in the dark here. Well, I think, I think what, what we have is, is Judge Jones indicating that it wasn't just, it wasn't losing claim construction. That was not what rendered the case exceptional. It was continuing to litigate after the claim construction was handed down. That happens, that happens all the time where parties disagree on the merits of that claim construction ruling. That, that is correct, Your Honor, but here... That doesn't make the case exceptional unless the argument is, is, you know, so devoid of merit that it warrants reaching that exceptional conclusion. Well, we don't know that. There's no explanation as to why litigating after the claim construction here was so inappropriate that it warranted this, this judgment. Well, what we have is a utter failure of proof on the very exact element that was the subject of the court's claim construction decision. In other words, you're saying once you get a bad claim construction, you should stop arguing and appeal. Not every case, Your Honor, not every case, but this was one that was on the outer edge of what was reasonable. This was unreasonable in light of what the claim construction was. There was no... What about the broad definition of intelligent agent in the specification? Again, Your Honor, I don't characterize it as, as broad. I mean, I look at it as intelligent... Just the definition of it, then. Well, it's a characterization of broad. Yeah, that, that doesn't, that, even, even under that definition, there is no proof whatsoever, and again, it's their burden to establish that the deploy function meets the elements of the claim, even under the definition that's in the specification for intelligent agent. There simply is no proof of describing, doing the analysis, comparing what's in the deploy function, looking at the code, describing the code, and saying here is where it does X, Y, and Z. What we have are conclusory statements If we disagreed, just hypothetically, if we disagreed with that characterization, would that be enough to say the district court was wrong here? No, Your Honor, because... Because it relied on one single finding, which was that it was unreasonable to continue after the claim construction. And, and what was unreasonable about it was, on the one hand, if, if we were right about intelligent... It's hypothetical. Understood. So, based on my hypothetical, what would be the answer? Based on your hypothetical, I think it's, it's, it's, it's not... The, the district court was correct, and in that scenario, they're either... My hypothetical was assuming the district court was wrong. Right, so if they're wrong, okay, so if the, so if the, but if, if the... And because that is the only reason provided for why attorney fees were granted, I would think you would have to concede that attorney fees would have to be vacated. Your Honor, with all due respect, I don't think so, because I think... Even under my hypothetical? Even under your hypothetical, because then, then, then their patent's invalid. And that's exactly the point the, the judge made over and over again, was you can't have it both ways. You can't thread the needle and argue that somehow there's infringement broadly, and the claim maintained its validity. That, that was the unreasonable nature that they took, and that's what distinguishes this case from all the other claim construction cases that this court has felt, has dealt with, and I've dealt with in my career, where, you know, if you get the claim construction wrong, that doesn't mean the case is over, and it's unreasonable to proceed. But here, it was unreasonable to proceed, and the court highlighted that issue from the beginning. And we had the PTAB decision even before then, which invalidated the claims on the same basis that Judge Joan, which he ultimately invalidated the claims on. And so, it's, it's not about whether... Well, the PTAB made fact findings, right? The PTAB, I would, I would, I would characterize it differently. I would say the PTAB made a determination that the, that the, that the POP reference was, was anticipatory. So... That's a fact question. Anticipation's a question of fact. So with that, I would agree, Your Honor. Okay. What about the redaction that the court held that you provided reasonable itemization and description of the work performed? How am I to review that? And I don't understand how the district court could determine that as well, given, you know, the lengthy redactions of every single entry, the description of the work. Let me, let me first point out, there was never a challenge by AIT to ask for the redactions through that process. And obviously, producing the descriptions would have been a waiver of attorney-client privilege, and there was never any discussion of them trying to approach us about trying to, you know, provide... Are you suggesting that parties don't usually provide descriptions of the work performed? In some situations, yes, they do, but not all situations, in my experience. And, and what we have here is an attorney declaration that was submitted that, it's 170-something pages, largely with redactions from the bills. But we provided... Because of all these descriptions? Because the entire thing is redacted. You're saying everything on the page is under attorney-client privilege? Well, the descriptions of the, what's on the page is the description of what every lawyer did for, during its time entry. And that's... So something like respond to summary judgment motion would be redacted as attorney-client privilege? I don't know if something as broad as that was actually redacted or not. But the fact that the work, you know, the attorney-client privilege is there. So you don't know whether that was redacted? I mean, I'll show you everything. Well, no, I know it's all redacted, but I don't know if that, if there was a particular broad description like that sitting, standing here before you. So what I, what I, what I do know is that there was, there was a concern about attorney-client privilege waiver, and there was a declaration that was submitted. And in opposition, there was never any request to produce anything that was unredacted. And again, you know, so as I said, what makes this case exceptional is not losing the claim construction. It's continuing to litigate after the claim construction. And again, when we, as we just heard in the earlier appeal, there was another failure of proof on the deploy function. And what we saw were conclusory statements about what the deploy function supposedly did, not in his expert report, but only in his deposition. And it was not the item specific analysis that's required in laying out where the infringement actually appears with respect to the deploy function. And unless your honors have any other questions, I'll see the rest of my time. Thank you, counsel. Thank you. Mr. DiVincenzo, you have quite a bit of time if you need it. Yeah, I'm just going to be brief. I want to address the thread the needle argument, because they say it in their brief. They say you can't thread the needle between the deploy function and the input control of POP. The two are nothing alike. Their experts never said they were anything alike. No one's ever compared them. The district court's opinion itself recognized that POP's an input field. You type in information and it stores it. The deploy function, as you can see in the first three pages of the detailed source code description of the deploy function, is nothing like an input field. You have two applications, a developer application and a production application. The production is the one that's live. The developer application is worked on. Then at a certain point, so you're not entering into this one, you're entering into this one. The changes are changes to metadata that affect the operation. Now when it's time to update, it doesn't go and just pull all of the changes, the whole developer application, and put it in the production A. It doesn't. It goes, it iterates through, it finds only what's detected, only the metadata that's detected, and incorporates that into the production application without the need for program. It's exactly what's taught in the specification. That's what the deploy function is. POP is nothing like that, and there's no evidence it is. Their own expert on invalidity didn't look at infringement. He admits it. He just made up a construction that he called AITs, and he said, if I can screw it broad enough to encompass any type of program that can detect anything, I would find anticipation. That is not threading the needle. We don't have to thread the needle. There's no needle to thread. The two are completely different. And if you're going to make a thread-the-needle argument, you need an expert to say, this is what's being used, this is the prior art, and the two are the same, or the same for purposes of the claim construction. You can't get up with an attorney argument and say, can't thread the needle. Why? This is about fees here. They say, we couldn't continue after the district court's order because of the descriptions of intelligent agent in the spec. They haven't come forward either in their merits brief or the fees brief and identified any aspect of any description in the specification that is a matter of undisputed fact is not encompassed by the deploy function. All they've said is, it's not there. Our expert didn't say it. He said it expressly. He gave the support for it. So we should win on the merits and therefore there would be no fees. But I have nothing further. And thank you very much for your time. My client really appreciated it. Thank you to both counsel. The case is submitted.